UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:22-cv-166-MOC

| PATRICIA GLAZEBROOK, | ) |
|---|---|
| Plaintiff, | ) |
| v. | ) **ORDER** |
| KILOLO KIJAKAZI,<br>Acting Commissioner of<br>Social Security, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on the parties' opposing Motions for Summary Judgment. (Doc. Nos. 9, 13). Plaintiff brought this action, pursuant to 42 U.S.C. § 405(g), for review of Defendant's final administrative decision denying her claim for supplemental security income ("SSI") under title XVI of the Social Security Act. Having carefully considered such motions and reviewed the pleadings, the Court enters the following findings, conclusions, and Order.

### FINDINGS AND CONCLUSIONS

#### I. Facts and Background

On October 18, 2019, Plaintiff filed a claim for SSI benefits. (Tr. 214–20). Her claim was denied initially and upon reconsideration by the State agency. (Tr. 106–09, 113–16). A hearing was held on February 7, 2022, at which Plaintiff, who was represented by an attorney, and a vocational expert both testified. (Tr. 48–79). On March 4, 2022, the ALJ issued an unfavorable decision finding Plaintiff not disabled. (Tr. 18–39). The Appeals Council denied Plaintiff's

request for review on September 2, 2022, making the ALJ's decision the final decision for judicial review. (Tr. 1–5). This appeal followed.

## II.     Factual Background

The Court finds that the ALJ's findings of fact are supported by substantial evidence and therefore adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

## III.    Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (internal citations omitted). Even if the Court were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if it was supported by substantial evidence. Hays, 907 F.2d at 1456. The Fourth Circuit has explained substantial evidence review as follows:

> the district court reviews the record to ensure that the ALJ's factual findings are supported by substantial evidence and that its legal findings are free of error. If the reviewing court decides that the ALJ's decision is not supported by substantial evidence, it may affirm, modify, or reverse the ALJ's ruling with or without remanding the cause for a rehearing. A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence. If the reviewing court has no way of evaluating the basis for the ALJ's decision, then the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.

Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations and quotations omitted).

## IV. Substantial Evidence

### a. Introduction

The Court has reviewed the transcript of Plaintiff's administrative hearing, the decision of the ALJ, and the relevant exhibits contained in the extensive administrative record. The issue is whether the decision of the ALJ is supported by substantial evidence, not whether the Court might have reached a different conclusion had it been presented with the same testimony and evidentiary materials. For the following reasons, the Court finds that the ALJ's decision was supported by substantial evidence.

### b. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim pursuant to the following five-step analysis:

a. An individual who is working and engaging in substantial gainful activity ("SGA") will not be found to be "disabled" regardless of medical findings;

b. An individual who does not have a "severe impairment" will not be found to be disabled;

c. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

d. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

e. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience must be considered to determine if other work can be performed.

20 C.F.R. § 416.920(a)–(f). The burden of proof and production during the first four steps of the inquiry rests on the claimant. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. Id.

### c. The Administrative Decision

Plaintiff was 47 years old at the time of the ALJ's decision and had past work experience as an assistant case worker and Medicaid billing clerk. (Tr. 33, 56, 73). She alleged disability due to several impairments, including pain and numbness in her hands. (Tr. 66, 254, 269, 274). She took care of a disabled child with special needs, but also had in-home care for her child. (Tr. 61, 251, 270).

As relevant here, Plaintiff's medical records showed that she has a history of treatment for her right shoulder, including repair of a rotator cuff tear of Plaintiff's right shoulder in April 2017 (before the alleged onset date) and recurrence of right shoulder pain in April 2019 after a fall. (Tr. 28, 330, 334, 354). Plaintiff had limited motion and some decreased strength in her right arm muscles. (Tr. 315, 327, 332, 335). She was prescribed pain relief medications and underwent corticosteroid injections in various joints, including her right shoulder. (Tr. 327, 332, 374, 404). Plaintiff reported that the injections helped her for several weeks. (Tr. 327, 362, 374, 389). She

also complained of left shoulder pain and alleged difficulty lifting her arms. (Tr. 65–66, 538, 550, 553, 559).

In addition to shoulder pain, Plaintiff complained of pain in her hands. (Tr. 471, 476). She complained of numbness in her hands and was diagnosed as having paresthesia of the skin. (See, e.g., Tr. 366, 394, 400, 472, 476–77, 482, 560, 594, 630). However, none of the exams showed weakness or decreased sensation in her hands or fingers. (See, e.g., Tr. 474, "left hand active ROM"; Tr. 587, "Strength is 5/5 in bilateral upper and lower extremities"; "Light touch proprioception and vibration is intact."). Also, none of the medical records documented any limitation in the use of Plaintiff's hands. In fact, State agency physicians found that Plaintiff had no limitations in handling (gross manipulation), fingering (fine manipulation), or feeling. (Tr. 87, 100).

The ALJ followed the five-step sequential evaluation in his analysis of Plaintiff's alleged disability. See 20 C.F.R. § 416.920(a). In particular, the ALJ found at step one that Plaintiff had not engaged in SGA since October 18, 2019, the date her SSI application. (Tr. 23). At step two, the ALJ found that Plaintiff had the following medically determinable and severe impairments: obesity, degenerative joint disease, degenerative disc disease, asthma, migraines, anxiety, and depression. (Tr. 23). The ALJ found at step three that none of Plaintiff's impairments, or any combination thereof, met or medically equaled one of the conditions in the Listing of Impairments at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (Tr. 25).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform a range of light work, as defined in 20 C.F.R. § 416.967(b), except, as relevant here: "she could occasionally reach overhead with bilateral upper extremities; she could frequently handle, finger and feel with bilateral upper extremities." (Tr. 27). The ALJ found at step four that Plaintiff was

unable to perform any past relevant work. (Tr. 33). At step five, however, after hearing testimony from a vocational expert, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.[1] (Tr. 34). Accordingly, the ALJ found Plaintiff not disabled within the meaning of the Act. (Tr. 22, 34).

V.     **Discussion**

Plaintiff raises only one issue in support of her argument. She argues that the ALJ did not perform a function-by-function evaluation of her ability to handle, finger, and feel when formulating the RFC. (Doc. No. 9 at 3–9). For the following reasons, the Court disagrees.

RFC refers to the most the claimant can still do despite her limitations. 20 C.F.R. § 416.945(a)(1). The RFC assessment is a function-by-function assessment of an individual ability to do work-related activities. Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *3. It is an administrative finding, not a medical opinion, which the ALJ independently formulates based on the entire record, medical and otherwise. See 20 C.F.R. § 416.945; SSR 96-8p, 1996 WL 374184, at *2.

Plaintiff argues that under SSR 96-8p and Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), the ALJ erred in not performing a proper function-by-function analysis as to her ability to handle, finger, and feel. (Doc. No. 9 at 8). However, this argument is contradicted by the ALJ's decision.

Although SSR 96-8p describes the RFC as a function-by-function analysis, in Mascio, the Fourth Circuit declined to adopt a per se rule requiring remand when an ALJ does not perform an

---

[1] The VE confirmed than an individual with Plaintiff's vocational profile and the frequent manipulative limitations, as found by the ALJ, could perform a significant number of light and sedentary jobs in the national economy, (Tr. 74–76), supporting the ALJ's decision that Plaintiff was not disabled.

explicit function-by-function analysis. 780 F.3d 636. The Fourth Circuit held that remand is only appropriate where the ALJ fails to address a "relevant function" or "other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2nd Cir. 2013)). That was not the case here.

The ALJ adequately addressed Plaintiff's relevant functional limitations and provided a reasonable rationale that allows for meaningful review. The ALJ first discussed in detail Plaintiff's allegations regarding her impairments and their effect on her functioning. (Tr. 25). The ALJ specifically noted Plaintiff's testimony about numbness in her arm and her complaint that she could not move her arms like she used to and has difficulty holding things. (Tr. 28, 65–66).

The ALJ then discussed the relevant medical evidence, including Plaintiff's history of right shoulder arthroscopic repair in 2017, and the more recent records regarding right shoulder pain in 2019 and her left shoulder pain in 2020, as well as the treatment she received for these conditions. (Tr. 29–30, 314, 327, 332, 334, 354, 362, 374, 389, 485, 538–39, 550). The ALJ noted the relatively few findings of decreased range of motion and strength in Plaintiff's shoulders, (Tr. 29, 314, 550), but he nevertheless credited them in finding that Plaintiff was limited in her ability to lift and use her arms for reaching, i.e., function-by-function.

The ALJ also considered the medical evidence regarding Plaintiff's hands. (Tr. 29–31). The ALJ noted Plaintiff's complaints of paresthesia in her hands and her reported prior history of carpal tunnel syndrome. (Tr. 29, 31, 366, 394). The ALJ also noted there were no x-rays taken of Plaintiff's hands and that even though a nerve conduction study of Plaintiff's upper extremities was considered, it was never ordered. (Tr. 30–31, 394). Notably, there were no exams showing weakness or decreased sensation specifically in Plaintiff's hands or fingers.

In April 2020, Plaintiff's left hand was assessed as normal with active range of motion. (Tr. 474). And, in August 2021, Plaintiff's strength was assessed as 5/5 in her bilateral upper and lower extremities, with intact light touch proprioception and vibration and 2/4 deep tendon reflexes in her bilateral upper and lower extremities. (Tr. 587). Here again, despite the relatively few objective findings regarding Plaintiff's hands, the ALJ still credited Plaintiff's complaints to a degree, and the assessment of "paresthesia" of the skin. (Tr. 31, e.g., Tr. 400, 471–72, 569–70, 612–13). This was reflected in the ALJ's RFC finding that Plaintiff was limited to no more than frequent handling, fingering, and feeling. (Tr. 27). The evidence relied on the ALJ to support these functional limitations clears the "more-than-a-mere-scintilla threshold." Biestek, 139 S. Ct. at 1157.

The ALJ's finding as to Plaintiff's manipulative limitations was further supported by State agency medical consultants at the initial and reconsideration levels of review, who found that Plaintiff was capable of even greater functional abilities. See 20 C.F.R. § 416.913a(b)(1) (explaining that State agency medical consultants are highly qualified and experts in Social Security disability evaluation). These consultants found Plaintiff could frequently reach overhead with her right arm and was unlimited in her ability to handle, finger, and feel. (Tr. 87, 100–01). The fact that the ALJ found a more restrictive RFC – occasional, rather than frequent overhead reaching, and frequent, rather than no limitation on handling, fingering, and feeling – shows that the ALJ considered all the evidence, medical and otherwise, when he assessed Plaintiff's RFC.

Contrary to Plaintiff's assertion, the ALJ did not simply make a conclusory statement that Plaintiff was limited to frequent handling, fingering, and feeling. (Doc. No. 9 at 7). The ALJ provided a detailed explanation regarding these specific functions. (Tr. 31). The ALJ provided the following rationale:

> The lifting and reaching limitations were provided to account for the claimant's history of right shoulder impairment and residual weakness and discomfort. Of note, the manipulative limitations were provided in consideration of not only her history of right shoulder impairment, but also the treatment notes routinely reiterating the assessment of 'paresthesias.' This is a symptom, not a medically determinable impairment. However, I note that the symptom was not accompanied by any actual objective finding to support it. It was reported she had a history of carpal tunnel syndrome and numbness in her hands and while an upper extremity nerve conduction study was mentioned, it was never ordered (Exhibit 3F/40). An EMG study showed no electrical evidence of neuromuscular disease (Exhibit 11F).

(Tr. 31).

The above rationale shows that the ALJ did, indeed, consider Plaintiff's manipulative abilities on a function-by-function basis and that there was no lack of explanation, as she contends. The ALJ's decision cogently established a logical bridge between the evidence and the specific manipulative functions.

To the extent that Plaintiff contends that no limitation was effectively placed on her ability to handle, finger, or feel, Plaintiff is incorrect. As discussed, the ALJ found that Plaintiff was limited to frequent handling, fingering, and feeling. "Frequent," which is defined as occurring from one-third to two-thirds of the time, is a limitation. SSR 83-10,1983 WL 31251, at *6; see also Carter v. Saul, No. 1:19-cv-00191, 2020 WL 1502860, at *5 (S.D. W. Va. Mar. 30, 2020) (explaining in a case involving frequent reaching that "frequent" in an RFC context signifies that an ALJ is "instituting a limitation upon the work that a claimant may perform, as 'frequent' is a limitation against jobs that would involve 'constant' reaching").[2]

Plaintiff may not agree with the ALJ's conclusion or how he weighed the evidence before him. However, the ALJ was entitled to weigh the evidence before him. "[I]t is the duty of the

---

[2] "Constantly" is defined as activity occurring two-thirds or more of the time. Dictionary of Occupational Titles, "Appendix C – Components of the Definition Trailer," 1991 WL 688702 (G.P.O.) (1991).

administrative law judge reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). In sum, the ALJ did as he was supposed to do when performing a function-by-function analysis of Plaintiff's ability to handle, finger, and feel. As shown above, the ALJ set forth a detailed analysis regarding Plaintiff's manipulative limitations that is ascertainable from his narrative discussion and supported by the record.

VI. Conclusion

The Court has carefully reviewed the decision of the ALJ, the transcript of the proceedings, Plaintiff's motion and brief, the Commissioner's responsive pleading, and Plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson, 402 U.S. at 401, Plaintiff's Motion for Summary Judgment will be denied, the Commissioner's Motion for Summary Judgment will be granted, and the decision of the Commissioner will be affirmed.

**ORDER**

**IT IS, THEREFORE, ORDERED** that:

(1) The decision of the Commissioner, denying the relief sought by Plaintiff, is **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment, (Doc. No. 9) is **DENIED**;

(3) The Commissioner's Motion for Summary Judgment, (Doc. No. 13) is **GRANTED**; and

(4) This action is **DISMISSED.**

Signed: May 8, 2023